Skrine *et al. vs.* Jackson *et al.*

---

SKRINE *et al. vs.* JACKSON *et al.*

1. Under the act of 1872 (Code, §1449), the ordinary is required, under certain circumstances, to order an election to determine the question of "fence" or "no fence;" the returns are to be made to him, and he is required to examine them and decide upon all questions that may arise out of the election, and proclaim the result. This is a part of the political power of the state which the legislature has seen fit to confer upon the ordinary; and without some authority vested in the judicial department, it cannot intervene or interfere in any manner with the power so granted to him. No provision is made by the act for any review of the decision of the ordinary, and it seems to have been contemplated that his action should be final and conclusive.

(a.) Neither the common law remedy by information in the nature of a *quo warranto* is applicable to the case, nor is there any statute authorizing the courts to inquire into the legality of such an election.

2. If the courts had jurisdiction in such a case, the remedy should have been sought before the ordinary had acted and the result had been proclaimed. After the ordinary had decided the questions before him and proclaimed the result of the election, it was then too late to seek redress by injunction.

September 16, 1884.

Elections. Ordinary. Fence. Government. Consti·
tutional Law. *Quo Warranto.* Injunction. Before Judge
Roney. Richmond Superior Court. April Term, 1884.

Quintillian Skrine *et al.,* citizens and freeholders of Rich-
mond county, filed their bill against George T. Jackson *et
al.,* also citizens and freeholders of the same county, and
all others agreeing with them in the election stated below,
alleging, in brief, as follows: An election to determine
the question of " fence " or " no fence " was held in Rich-
mond county; the ordinary declared the result in favor of
" no fence," and defendants were threatening to put into
execution §1455 of the Code, under this election, by im-
pounding stock running at large after July 1, 1884, and
thus injuring the owners and begetting vexatious litigation.
Outside of the city of Augusta (which has an ordinance
regulating the running at large of stock), this law is not
suitable or beneficial, much of the land being too poor or
too marshy for cultivation, but furnishing grazing for cat-
tle, and many of complainants being, in whole or in part,
dependent for a living on their stock and unable to raise
them without such grazing. The election was illegal and
the proceeding void for the following reasons:

(1.) Because several petitions, signed by ninety-three
citizens and freeholders who desired an election (forty-six
of them being citizens of Augusta), were filed with the or-
dinary on the same day; counter-petitions, signed by one
hundred and sixty-eight citizens and freeholders, were
filed; no other " supporting" petition was filed, but the
election was ordered.

(2.) Because the election was held on January 8, 1884,
and the decision of the ordinary in favor of "no fence "
was announced and published on January 10, before com-·
plainants, who resided out of the city, could be made aware
of the count.

(3.) Because the election in the city of Augusta was
not held in the several militia districts therein, but was

ordered by the ordinary to be held, and was held, at the court-house alone; and if the vote of the city be rejected, there was a large majority for " fence " in the country districts.

(4.) Because the law under which this election was held was contrary to the constitution of the United States.

(5.) Because the law is not applicable to Richmond county as a whole, whatever might be the case as to the districts of the county.

The prayer was for injunction to prevent the defendants " and their confederates " from carrying into effect the stock law under this election by seizures and impoundings, and for subpœna.

Defendants, for cause why injunction should not be granted, showed, in brief, as follows : " There is no equity in complainants' bill, and the court has no jurisdiction. They had an adequate remedy at law, of which they did not avail themselves, and they are now estopped thereby; and if this action lies at all, it is premature." They denied that no " supporting " petition was filed, cited the minutes of the ordinary, in which it was stated that one was filed, and insisted that complainants could not go behind the judgment of the ordinary. They denied that complainants did not have ample time to learn the result of the election and file objections before it was declared by the ordinary, the returns being in. as required by law, by 12 m. on January 9, and twenty-four hours or more having elapsed thereafter before a declaration of the result. They denied that, under the acts regulating the corporate limits of the city of Augusta and the militia districts and voting precincts therein, there was any other proper place than the court-house for the opening of polls in such an election. (On this subject reference was made to the Acts 1809, 1818, 1820, 1870, 1882, 1883; also Acts of 1823, p. 73; of 1830, p. 104; of 1836; of 1837, p. 88; of 1834, p. 89; of 1879, p. 31; of 1859, p. 55.) Defendants are not only real estate owners in Augusta,

but also are large land owners outside of the city. They deny any knowledge of anything illegal or unconstitutional in the matter complained of, " and plead a want of jurisdiction in this court to grant any of the relief prayed for by complainants."

" And these defendants also pray that this court will adjudicate and determine the legal effect of the action of said ordinary, as set forth in the exhibits hereto annexed, as a court selected by law, under the constitution of this state, that the same is final and conclusive, and that complainants, as citizens, are bound thereby, and cannot, under the allegations in their bill, be now heard to go behind the same or raise any of the questions set forth in the bill."

The application for injunction was heard on the bill, answer, or response showing cause, and proof submitted. It is unnecessary to set out the latter, further than to state that it appeared from the affidavit of the ordinary that a petition for an election was filed, and at the same time another petition was left with him as a " supporting petition," in case a counter-petition should be filed.

The injunction was refused, and complainants excepted.

HOOK & MONTGOMERY, for plaintiffs in error.

JOS. B. CUMMING; J. GANAHL; FRANK H. MILLER, for defendants.

BLANDFORD, Justice.

Certain freeholders, citizens of Richmond county, petitioned the ordinary of that county for an election to be held by the voters of the county for fence or no fence. The ordinary issued an order for an election, which was held on the eighth day of January, 1884; on the ninth day, the votes at said election were consolidated by the managers and turned over to the ordinary; on the tenth day of the same month, the ordinary declared that "no fence" had received a large majority of the votes cast at said election.

- In March thereafter, the plaintiffs in error filed this bill, in which they prayed an injunction against the defendants, for certain reasons assigned in the bill. The judge of the superior court refused the injunction, and this decree is assigned as error here.

Under the act of 1872, page 34, Code, §1449, the ordinary is required to order an election under certain circumstances, and the returns of the election are to be made to the ordinary, who is required to examine the same, and to decide upon all questions which may arise out of said election, and he shall proclaim the result. There is no provision made by the act for any review of this action by the ordinary. The legislature seems to have contemplated that this action by the ordinary should be final and conclusive. No court in this state has any power, by injunction or otherwise, to interfere therewith. The legislature has seen proper to confer this power on the ordinary; it is part of the political power of the state, and without some authority vested in the judicial department of the government by law, the judiciary cannot intervene. It would be an assumption of power on their part, unauthorized by law, by any of its processes, to interfere in any manner with the full exercise of power granted by the act to the ordinary; and we know of no precedent which will authorize the courts to interfere in the way and manner asked for by this bill. *Tharpe vs. Hardison.* 69 *Ga.* 283.

There are but two modes by which the legality of an election may be inquired into—by the common law and by statute. By the common law, an information in the nature of a writ of *quo warranto* was exhibited by the state, upon the relation of some person claiming the office said to be usurped by the defendant, and he was required to show by what authority he held the office. The legality of his election might be inquired into by this proceeding, but by our Code the relator must claim the office himself or be interested therein. Code, §3203. The state

and the person who exercises the office are parties to this case. It is quite clear that such a proceeding is not applicable to the present case. There is no office, and there is no person claiming an office, and no person exercising an office, but simply a law is declared adopted, which provides for the future that no fence need be used by the citizens of Richmond county. Is there any statute of force in this state, other than has already been referred to, which authorizes the courts to inquire into the legality of this election? None has been pointed out to us, and we have failed to find any. Then, if the remedies provided by the common law fail, and no statutory remedy be provided, is not the presumption conclusive that the legislature did not intend to have judicial interference in this matter, but to leave it to the determination of the ordinary, as provided in the act? See McCrary on Elect ons, pages 221, 222, 223; Suffrages and Elections by Naar, 230. In the case of *Freeman et al. vs. McDonald et al.*, 72 *Ga.*, 812, this same principle was asserted, which is, that the legislature could provide a tribunal for the determination of contested. elections, and that such determination was final and conclusive; and as the legislature has provided in the act under which this election was held how the same was to be determined, and no remedy existing at common law, or other provision by statute by which the courts can inquire into the legality of this election, then the decision of the ordinary is final and conclusive.

But even if we were wrong in the view presented, yet we are entirely clear that, under the allegations in this bill and the facts of this case, the chancellor was right in refusing the injunction. The bill came too late, after the ordinary had acted and proclaimed the result, to have authorized the injunction to issue. If there was any remedy at all, it should have been sought before the ordinary had acted and the result had been proclaimed. All things must have an ending; there must be some finality; and we think that this matter had an end and final termination

when the ordinary decided and proclaimed the result of the election. *Dyson, ordinary, vs. Pope*, 71 *Ga*, 205; *Freeman et al. vs. McDonald*, 72 *Ga.*, 812.

So the judgment of the court below must be affirmed.

Judgment affirmed.