SPEER, treasurer, *et al. v.* MARTIN *et al.*

PER CURIAM. The judge erred in enjoining the Treasurer of the State from paying mileage as involved in this case.

*Judgment reversed. All the Justices concur, except Hill and Gilbert, JJ., dissenting.*

No. 5396. JANUARY 14, 1927.

Injunction. Before Judge Humphries. Fulton superior court. April 1, 1926.

This was a petition to enjoin the Speaker of the House of Representatives and the President of the Senate from certifying to the State Treasurer, for mileage payments, the names of any of the members of the respective houses over which they presided, on account of an extraordinary session of the General Assembly convened on March 19, 1926, to succeed an extraordinary session thereof which adjourned on March 18, 1926, save such members who actually returned to their homes between such sessions; and to enjoin the State Treasurer from paying from the funds of the State any such mileage. On the hearing the petitioners offered an affidavit of a member of the General Assembly, to the effect that he knew a majority of the members thereof did not return to their homes between the two sessions above mentioned. The defendants rested on answers which had been filed by the Speaker and the State Treasurer. The court passed an order enjoining the said Speaker of the House of Representatives from certifying to the State Treasurer any sums as mileage to be paid members of said House for going from the extraordinary session which adjourned on March 18, 1926, and for coming to the session which convened on March 19, 1926, except to those members who actually

---

Constitutional Law, 12 C. J. p. 802, n. 94; p. 878, n. 85; p. 879, n. 8.

traveled from the first and to the second of said sessions, and enjoining the State Treasurer "from paying mileage to members of the General Assembly for said two sessions, except upon a certificate of the Speaker of the House of Representatives, and the President of the Senate, made as hereinbefore provided, for mileage earned by actual travel and actually paid." The Speaker, and the attorney for the State Treasurer for that officer, filed a further petition praying the court to modify his above order with respect to the language, "actually paid;" showing to the court that such language would interfere with payment of mileage in accordance with the custom of paying the maximum amount of ten cents a mile allowed by law, and showing further that the question of payment of mileage according to the actual sums expended by the members was not raised in the first petition, but only the question as to whether the members were entitled to mileage for both of the extraordinary sessions where they did not actually travel to their homes and back to the Capital between the two. The court passed another order reciting that the court was of the opinion that the mileage provision of the constitution meant "mileage actually paid, not exceeding ten cents per mile, and not a flat mileage of ten cents per mile, regardless of the amount paid for travel; and that the act of the legislature appropriating a flat mileage of ten cents per mile is unconstitutional." The State Treasurer only excepted to the rulings of the court enjoining the Speaker from certifying and the Treasurer from paying mileage to members of the General Assembly who did not return to their homes between the close of the first extraordinary session and the opening of the second, and enjoining the Speaker from certifying and the Treasurer from paying any mileage to such members except the amounts actually paid out by them.

*George M. Napier, attorney-general,* and *T. R. Gress, assistant attorney-general,* for plaintiffs in error.

*McElreath & Scott,* contra.

RUSSELL, C. J. There is only one question presented in this case: whether the judge of the superior court erred in rendering the judgment sought to be reviewed, which restrained the Speaker of the House and the President of the Senate from certifying and approving the per diem of the members of the General Assembly at the extraordinary session which convened on March 19, 1926,

and adjourned April 12, 1926. It is my opinion that the three co-ordinate branches of our State government are so completely independent each of the other that the judicial department of the government can not interfere with any provision made by the legislative branch of the government which the General Assembly may deem to be necessary as expenses in discharging its duties of legislation. The question is not raised that the mileage is in an amount in excess of that allowed by the constitution, but this proceeding merely seeks to determine under what circumstances such mileage may be allowed by the proper committees and presiding officers of the General Assembly. I think that the judge in granting the injunction exercised a power not conferred upon the courts, to wit, that of in a sense supervising the expenditures of the General Assembly for the conduct of its business of legislation.

BECK, P. J., and ATKINSON, J., concur in the judgment of reversal, being of the opinion that upon a construction of article 3, section 9, paragraph 1, of the constitution of Georgia (Civil Code of 1910, § 6454), members of the General Assembly are entitled to mileage for attendance upon an extra session of the legislature, just as they would be for attendance upon a regular session; and the session in question here being an extraordinary session called by the Governor, they were entitled to receive the mileage to and from their respective homes, whether or not they actually traveled, and that the court below erred in enjoining the payment of the same, and that to this extent the judgment of the trial court should be reversed.

HINES, J. I concur in the result of the judgment of reversal for this reason: Whether the members of the General Assembly are entitled to mileage for attending the extra session of the legislature is a question for determination by that body, and is not a question for judicial determination. *Skrine* v. *Jackson, 73 Ga.* 377; 12 C. J. 878, § 381. By law the compensation due to the members of the General Assembly must be certified by the President and Speaker, respectively, upon the report of the auditing committee, to the treasurer, who afterwards shall pay each member who presents his accounts duly audited. Civil Code (1910), § 354. By this statute a method is provided for determining what compensation, including per diem, is due to the members of the General Assembly. This statute establishes a special tribunal for

the determination of the matter in question. There certainly should be no judicial interference with this method and this tribunal before any action is taken by this special tribunal, by assuming that it will certify per diem to which members are not entitled under the constitution.

GILBERT, J., dissenting. This case presents a degree of novelty, as is shown by the fact that no case in any State has been found which deals with the precise question. The States differ in their provisions for compensation of legislators, some making special provisions for extraordinary sessions and limiting mileage. Index Digest State Constitutions, 898 et seq. It is certain that it has not previously been the subject of litigation in this State. As I view the principles involved, it is impossible for me to concur in the judgment of reversal, and the importance of the subject is my excuse for presenting this dissent. It is declared by two of the Justices that this is a political question, and therefore that this court has no jurisdiction (citing *Skrine* v. *Jackson,* 73 *Ga.* 377) ; that a special tribunal, consisting of the President of the Senate and the Speaker of the House, respectively, upon the report of the auditing committee, have been provided by statute to determine what compensation is due to members of the General Assembly. Civil Code (1910), § 354. The *Skrine* case dealt with the power of the courts to interfere with legislative power delegated to the ordinary to declare the result in an election in favor of or against a fence. If this were a question of legislative policy of delegating such power, it would fall under the *Skrine* case; but we are not dealing with the question of whether the legislature should delegate certain powers to the ordinary, nor with the policy of referendum. Such questions are not justiciable. For a full discussion of this question, see *Green* v. *Atlanta,* 162 *Ga.* 641 (135 S. E. 84). At a very early date in the history of this court, when it was composed of Judges Lumpkin, Warner, and Nisbet, in the case of *Beall* v. *Beall,* 8 *Ga.* 210, the court dealt with the fundamental question of the respective powers and relationships of the three departments of government. It was there said: "Measures, exclusively of a *political, legislative,* or *executive* character, are not examinable by the courts. In *such* case, the remedy for any real or supposed abuse is solely by appeal to the people, at the elections." The court also said: "The General Assembly of this State has power to make all

laws and ordinances which *they* shall deem necessary and proper 'for the good of the State,' provided they are not repugnant to the constitution of the United States, the laws of Congress passed pursuant thereto, public treaties, and the constitution of the State." This was not the declaration of a new principle. It had been recognized from the beginning of our government. Our present constitution declares: "Legislative acts in violation of this constitution, or the constitution of the United States, are void, and the judiciary shall so declare them." Civil Code (1910), § 6392. This provision, in one form or another, has been embraced in every constitution in the history of this State—those of 1777, 1789, 1798, 1861, 1865, 1868, and 1877. McElreath on the Constitution of Georgia, §§ 245, 317, 373, 456, 561, 681, and 850. The Provincial Congress of Georgia, on April 15, 1776, proclaimed a temporary constitution which provided: "That all laws, whether common or statute, and the acts of Assembly which have formerly been acknowledged to be of force in this Province, and which do not interfere with the proceedings of the Continental or our Provincial Congresses, and also all and singular the resolves and recommendations of the said Continental and Provincial Congress, shall be of full force, validity, and effect until otherwise ordered." McElreath on the Constitution of Georgia, § 52 (4). Thus it will be seen that the legislative department was never without constitutional limitation.

The General Assembly formally passed an act making an appropriation with which "mileage" could be paid. Mileage could not otherwise be paid by the Treasurer. The act is found in Georgia Laws, Extraordinary Session 1926, p. 8, approved April 10, 1926. Petitioner alleges, on information and belief, that the Speaker and the President of the Senate construe the constitution (Civil Code (1910), § 6454) as allowing mileage to members whether or not they actually traveled to and from the extraordinary session, and that they will certify to the Treasurer accordingly; and that, giving such construction, the payments would be unconstitutional. Only the State Treasurer excepted to the judgment rendered by the trial judge. The Treasurer properly desired binding authority for his own protection. Our constitution declares: "No money shall be drawn from the treasury except by appropriation made by law." Civil Code (1910), § 6440. Civil Code (1910), § 228 (1), provides that it is the duty of the State Treas-

urer to pay out money "only upon the warrants of the Governor, when countersigned by the comptroller-general, excepting the draft of the President of the Senate, and Speaker of the House of Representatives, for sums due to the members and officers of their respective bodies." Civil Code (1910), § 352, provides: "But no member shall receive pay for absent time unless on account of sickness of himself or family, or by express leave of the house of which he is a member." Code section 354, construed together with § 228 (1), makes quite clear to my mind that in case of payment of per diem and mileage to members the certificate of the Speaker and the President merely takes the place of or stands in lieu of the warrant of the Governor, countersigned by the Comptroller-General. The warrant neither adds to nor takes from the validity of the appropriation act. It is an additional condition precedent and safeguard, and attests the fact that under the act the payee named in the warrant comes within the appropriation. Compare *Fletcher* v. *Renfroe,* 56 *Ga.* 674, 678; *Gurnee* v. *Speer,* 68 *Ga.* 711; *Park* v. *Candler,* 113 *Ga.* 647, 669 (39 S. E. 89). So the certificate merely attests that the member has, except when providentially hindered (Civil Code (1910), §§ 352, 353), attended as contemplated, and therefore has earned the amount of money named in the certificate. In § 354 the word "compensation" is used, comprehending both per diem and mileage—but that can not alter or vary the fact that the constitution treats the items separately. Some of my associates are of the opinion that mileage is just additional "compensation." This view seems to me unwarranted. If the makers of the constitution had so intended, language could, and doubtless would, have been employed, leaving little or no room for speculation. The constitutional convention of 1877 was noted for including among its members a galaxy of great intellects and determined patriots. These men had witnessed the orgy of corruption that deluged our stricken country following defeat in a long and bloody war. They had seen corruption and extravagance, to say nothing of incompetence, run riot in legislative and executive departments. They were determined to succor our stricken people from another such experience. General Toombs was a leading member, ably supported by many patriotic members. The one consuming desire, amounting almost to an obsession, of General Toombs was to securely protect the public funds.

Who doubts that the great intellect of Toombs would have compelled clear statement of the fact, if the framers of that instrument had intended the payment of mileage to be merely additional compensation? Instead, they limited the payment of per diem to a fixed sum, and for mileage "not exceeding ten cents for each mile traveled." Since 1877, to this day, our legislators have been honorable and trustworthy; but our duty is to declare the true meaning of the organic law. And what seer or prophet is there who may predict with certainty when the next deluge of corruption may overtake us?

It is significant, too, that neither the constitutional convention of 1865 nor that of 1868 adopted any limitation on or express provision for mileage. The latter (1868) has gone into history as the "black and tan" convention. When the convention of 1877 met, the imperative necessity for safeguards of the treasury was obvious. Article 3, section 9, paragraph 1, of the constitution of 1877 (now Civil Code (1910), § 6454), fixing the limits of per diem and mileage, was adopted by the convention apparently without debate and as a matter of course. Small's Report, 377, 378. The constitution of 1861 provided as follows: "The compensation of the members and officers of the General Assembly shall be fixed by law, at the first session subsequent to the adoption of this constitution: and the same shall not be increased so as to affect the compensation of the members or officers of the Assembly by which the increase is adopted." It will be seen that in that instrument there was no separate provision for per diem or mileage, nor was there any restriction as to amount, which was left to be fixed by law. Investigation also discloses that in none of the previous constitutions is there to be found such limitation. The framers of the present constitution had studied and knew all of the previous constitutions; knew the experiences through which the State had gone, and were impressed with the necessity of adding strict limitations upon the power of appropriating public money. In such circumstances every word must be construed as being fraught with meaning and not to have been employed by mere accident. The constitution in terms provides that "mileage shall not exceed ten cents for each mile *traveled*" (italics mine), which authorizes the payment of an amount not exceeding ten cents for each mile *actually traveled*. The word "traveled" has in

this instance the same meaning as "actually traveled," rather than "may have traveled" or "could have traveled." Its purpose in the constitution is to ensure the payment of members who have actually traveled as contemplated by this section of the constitution. The General Assembly may appropriate for such payment ten cents for each mile traveled or a lesser sum. The constitution does not require the payment of the actual expenses. Payment may be the actual sum expended or it may be less, or it may be more, provided the payment does not exceed ten cents per mile traveled. The only restriction as to amount is that it shall "not exceed ten cents per mile traveled, by the nearest practicable route, in going to and returning from the capital."

The court below construed the clause of the constitution to restrict payment for mileage to the number of miles "actually traveled," and also "actually paid." In so far as the court construed the constitution to restrict payment to miles "actually traveled," the judgment should be affirmed. In so far as the construction also limited payment to amounts "actually paid," the judgment should be reversed.

I am authorized to say that Mr. Justice Hill concurs in this dissent.