## HOLLIMAN *v.* THE STATE.

No. 8251. July 23, 1932.

*J. B. & T. R. Burnside,* for plaintiff in error.

*M. L. Felts, solicitor-general,* contra.

Russell, C. J. . This is an application for the grant of the writ of certiorari to review the decision and judgment of the Court of Appeals in affirming the judgment of the superior court of McDuffie County in a criminal case in which Holliman was convicted of a felony of stealing a bale of cotton.   More than a year ago the case was considered by this court, and a majority of the court agreed that the certiorari should be denied.   The writer was of the opinion that the writ should be granted, and held up the case and took the record and briefs for the purpose of reducing to writing the reasons for his dissent with a view that the same should be published in the reports of the court.   The writer laid the papers aside, and, in the pressure of other business which under the law could not be delayed without an affirmance resulting as a matter of operation of law, he mislaid the papers in this case.   For all delay in the rendition of the judgment the writer assumes full responsibility. In the administration of the law, I am of the opinion that it is no wrong to delay an unjust judgment, even if I be powerless to prevent it.   Several months ago, after the legislature had passed the act of 1931 (Ga. L. 1931, p. 163), in which it was declared that all applications for certiorari which were not decided within ninety days should be considered as having been granted, this petition for certiorari was again before the court, all the Justices being present, and the question arose whether under the rule prescribed by the General Assembly the certiorari in this case was now granted as a matter of law.   The court was unanimously of the opinion that the legislature exceeded its power in attempting to prescribe a rule dominative of the judgment of this court upon the grant and refusal of certioraries, and the other members of the court requested the writer to prepare the opinion of the court upon this subject. The court, in at least one instance, acted upon the unanimous decision just referred to.   The majority of the court, however, at the same time adhered to its previous view in denying the certiorari in this case.

234

I dissent because I am of the opinion that the Court of Appeals erred in the judgment rendered herein, which appears in 42 *Ga. App.* 322. I am of the opinion that special grounds 1 and 2 of the motion for a new trial should have been considered by the Court of Appeals, and should now be considered by this court. It is stated in the first special ground of the motion for new trial, that, "after said case was called for trial, defendant moved to continue same on the ground of the absence of Mr. and Mrs. Josh Whitaker, both of whom had been subpœnaed as witnesses for defendant, but Mr. Whitaker was then in a very critical physical condition and not expected to live through the day. So that neither of said witnesses could be present at the trial." The solicitor-general accepted the statement of movant's counsel as meeting the requisite showing for a continuance on all grounds relating to the absence of the witnesses, but he required proof as to what movant expected to prove by the absent witnesses. Thereupon proof was made that he expected to prove, which could not be proved by any other witness, that witness's truck, which was a Chevrolet truck, stayed in the yard of said absent witnesses in Columbia County, Georgia, all night, from dark until early next morning. After this sworn statement the solicitor-general who was prosecuting the case stated in open court: "I am willing to admit that that truck stayed in the yard from after dark until four o'clock in the morning on September 13th, and that that is a fact." Upon this admission in open court by the solicitor-general, the court overruled the motion to continue, without requiring the aforesaid admission to be reduced to writing in the manner required by law so that it could be introduced in evidence. "Which said ruling overruling said motion to continue without causing the admission of the solicitor-general to be reduced to writing, as required by law, movant says was error." In the second special ground of the motion for new trial it is averred that after this admission, as stated, the solicitor-general objected to movant's counsel making any comment on said admitted fact, which the court then and there sustained upon the ground that the admission had not been formally introduced in evidence, and the court refused to allow movant's counsel to comment on said admission of fact, although it had been made in open court after the case had been called for trial.

There can be no question that it is the duty of the court to have

admissions of fact by an opposite party, which are deemed by the court to be a sufficient substitute to permit a showing for a continuance otherwise imperative in its nature to be overruled, to be reduced to writing. Penal Code (1910), § 989. The party who asks a continuance has no duty whatever in the matter. In this instance I do not think the note of the judge is any qualifying statement which interferes with this statute and relieves the error alleged in the first special ground of the motion for a new trial. Section 989 of the Penal Code is as follows: "No continuance shall be allowed in any court on account of the absence of a witness, or for the purpose of procuring testimony, when the opposite party is willing to admit and does not contest the truth of the facts expected to be proved; and the court shall order such admissions to be reduced to writing." The statement by the court in allowing the amendment to the motion for a new trial is: "The recitals of fact," etc., "are hereby approved as true and correct, except as to ground one (1) of the amendment, for the reason that the court required the court reporter to take down the admission therein referred to in shorthand, and the court understood that that was all movant's counsel required, as at no time during the progress of the trial or the argument to jury did movant's counsel request that the admission be written out so as to introduce it, nor at any time did they offer to introduce it in any shape, form, or fashion." I do not think this explanation of the court contradicts in any manner the statement of the motion that the court failed to perform his duty as alleged in this first ground of the motion. It is not stated in the note by the court that movant's counsel expressly waived reducing the admission to writing that could be read and understood by an ordinary jury, and it must be assumed that counsel did not make such waiver, or the court would have stated it. And certainly to take down the admission in shorthand, in stenographic chirography, would be ordinarily perfectly useless, as futile as if it had never been reduced to writing at all. Counsel could not read it himself, except in very rare instances. I think that the court erred in not complying with the law as written, and furnishing to the defendant or his counsel, for whatever use he might see fit to make of it, the admission upon which the court denied him a continuance. The qualifying note only qualifies to the extent that the court "understood" incorrectly, and therefore misunderstood the

court's legal duty in the premises. As I understand the law, unless a party gets the admission of his adversary supplied to him by the court as authoritative evidence, the failure to continue the case, when otherwise the party was entitled to the presence of his witness under the showing made, renders all proceedings in the cause nugatory.

The note of the judge on the second special ground of the motion is as follows: "The jury had not been stricken and empaneled when the motion for a continuance was made, and when the admission was made by the solicitor-general as to the time the truck stayed in the yard, movant's counsel had not offered the admission in evidence, nor requested its admission when he undertook to comment on it in his argument." I can not see how this note is applicable to the facts of the case. Naturally, it would be assumed that the jury had not been empaneled or stricken when the motion for a continuance was made. Ordinarily, especially in a felony case, where from 48 names the jury would be selected after putting them upon their voir dire, courts do not have the jury stricken or empaneled until they have ascertained whether the case is ready for trial. The court stated in his note: "When the admission was made by the solicitor-general as to the time the truck stayed in the yard, movant's counsel had not offered the admission in evidence." This would seem to be true unquestionably, in view of the fact that at the time the admission was made by the solicitor-general the trial had not begun. No jury had been stricken or empaneled. I know of no form of evidence more respected than that denominated as solemn admissions in judicio, regardless of the failure of the court to furnish the defendant with a copy of the admission as required by law other than in meaningless hieroglyphics. The representative of the State, in the hearing of the court, when it was in session considering the continuance of this case, heard the admission. It was very simple. The admission was that the defendant's truck, in which he is charged to have moved the cotton, was on the night the cotton was stolen in a different county from that of the theft, and that it stayed there virtually all night. The importance of this testimony is so apparent that I think, upon the doctrines controlling admissions of parties in open court, it is rendered admissible for all purposes. This rule of law is planted upon a higher plane than the mere directory provisions of the Penal

Code, § 989, and the latter is necessarily subordinate to it. For these reasons, I think the Court of Appeals erred in the ruling first stated in 42 *Ga. App.* 322.

A careful reading of the record convinces me that the court erred in admitting the testimony of the witness that he "later found out that that was a bale of cotton left there by Mr. Holliman. I found out it went there in his name. I got that information from Mr. Cook." In view of the evidence that this was information which Mr. Cook got by inquiry, and the witness in making his statement plainly states that all he knew about it he got from Mr. Cook, the objection that it was hearsay is absolutely sustained; and the testimony in the case being altogether circumstantial and very weak, the error in the admission of this testimony was not only extremely prejudicial, but altogether unlawful. In the state of the record there is extremely grave doubt as to the sufficiency of the circumstances adduced to connect the defendant with the crime, or to show any larcenous intention on his part; it rather appearing that Mr. Holliman, as a truckman, made a mistake in getting a bale of cotton which he thought belonged to Cook, for whom he was hauling, which belonged to some one else, but which was deposited in the warehouse in Cook's name. After a careful consideration of the alleged newly discovered evidence, I have no doubt that it would more than probably produce a different result upon another investigation. For that reason, I think the Court of Appeals erred in its second ruling.

Despite the opinion of the writer as to the merits of this application for certiorari, we all agree that "An act to regulate the practice upon application for the writ of certiorari before the Supreme Court of the State of Georgia to the Court of Appeals of the State of Georgia; to provide for the decision by the court upon such application as to whether the same shall be granted or refused; to provide for the time within which the court shall pass upon such application, and the effect of the failure of the court to pass upon such application within the period required by this act" (Ga. L. 1931, p. 163), is unconstitutional and void. Section 1 of the act is a mandatory requirement that the Supreme Court "shall" either grant or refuse all applications for certiorari to the judgment of the Court of Appeals within ninety days; and the second section provides that if the court fails within ninety days to refuse

the application, "the writ of certiorari shall issue," and the same be placed for argument by the Supreme Court upon its trial docket and calendar for the call of cases next succeeding the expiration of said ninety days, and thereafter disposed of as though the application for certiorari had been granted by the court. This is an attempt on the part of the legislative branch of our State government, not only to regulate the procedure of the business of this court, but also, in case the court is so situated for any reason, and no matter how grave may be the pressure of the most important litigation or how insignificant may be the questions involved in the petition for certiorari, if this court fails for any reason to deny or grant the writ, the legislature itself grants a certiorari. Art. 1, sec. 1, par. 23, of the constitution of 1877 provides: "The legislative, judicial, and executive powers shall forever remain separate and distinct, and no person discharging the duties of one shall at the same time exercise the functions of either of the others, except as herein provided." We fully recognize that it is the right of the General Assembly to pass all laws, civil or criminal, which advance the rights of citizens, and it is the duty of the court to neither add to nor take from the laws as thus passed, but to enforce them as written. This court from its earliest existence has steadfastly adhered to this rule. We have always abstained, in construing laws, from attempting to legislate. When the language is so plain as to be readily understood, this court enforces the legislation to the letter. If through ambiguity or obscurity the meaning of laws enacted by the General Assembly is not readily to be understood, we apply as best we can to the words used the meaning of those words as ordinarily used and as generally understood by the people. While different language was employed by some of this court in *Speer v. Martin,* 163 *Ga.* 535 (136 S. E. 425), the court was unanimous in the opinion that it had no power to determine questions as to the expenses of the legislative session, that being a matter of regulation appertaining to the legislative department, and as to which this court was without power to interfere, no matter what action may be taken by the General Assembly. The pressure of business upon this court is such that it can not abate the power delegated to it by the constitution adopted by the sovereign people in 1877, or surrender prerogatives which are inherent in courts and absolutely essential to their existence and the efficient administration of justice.

Art. 6 of the constitution of 1877 deals with the "Judiciary." In paragraph 5, section 2, of this article, the people of Georgia in 1917, adopting an act submitted to them in 1916 (Ga. L. 1916, p. 19), incorporated the following amendment: "It shall also be competent for the Supreme Court to require, by writ of certiorari or otherwise, any case to be certified to the Supreme Court from the Court of Appeals for review and determination, with the same power and authority as if the case had been carried by writ of error to the Supreme Court." The act of 1931, supra, proposes to vary the general rule declared in the constitution, which is "the same power and authority as if the case had been carried by writ of error to the Supreme Court," by prescribing that if a certiorari is granted it shall be placed upon a different footing and under a different rule than laid down by the constitutional provision to which we have referred. There is no requirement, as to the other cases with which we deal, that there should be any judgment of a particular kind rendered, or that these cases should be decided within ninety days. The constitutional requirements as to other cases are elsewhere prescribed, but nowhere is there any requirement of the constitution that any case shall be argued or placed for argument upon the calendar dockets of the court within the prescribed time. These have hitherto been fixed by the rules of the court. If this act had been passed as a matter to be submitted to the people, and by them incorporated in the constitution, it would be our duty to obey it, as we have always done if such question is raised. The provision in art. 6, sec. 2, par. 6, requires this court to dispose of every case at the first or second term after such writ of error is brought, and the constitution in this paragraph of the constitution denies this court the right to continue a case except for providential cause. But the right to enact its own rules for its government in the disposition of cases is recognized in art. 6, sec. 2, par. 9, of the constitution, in which it is provided that "The manner of certifying questions to the Supreme Court by the Court of Appeals, and the subsequent proceedings in regard to the same in the Supreme Court, shall be as the Supreme Court shall by its rules prescribe, until otherwise provided by law." The constitution recognizes that the scope and importance of the duties of this court are such that it would be unwise to impose a time limit upon the performance of our duties with relation to cases in the Court of Appeals in which

the Court of Appeals desires instructions, by the provisions of par. 9 of sec. 2 of art. 6 of the constitution, which declares that "No affirmance of the judgment of the court below in cases pending in the Court of Appeals shall result from delay in disposing of questions *or cases* certified from the Court of Appeals to the Supreme Court, or as to which such certificate has been required by the Supreme Court as hereinbefore provided." The words, "as to which such certificate has been required by the Supreme Court as hereinbefore provided," clearly refer only to the provisions of paragraph 5 to which we have already referred, in which power is given the Supreme Court to require, by certiorari or otherwise, any case to be certified to the Supreme Court from the Court of Appeals. This language in the constitution seems to include all applications for the writ of certiorari, because when this court grants a certiorari the only effect is "to require by certiorari" the case to be certified to the Supreme Court. We do not think it is within the power of the General Assembly, by any exercise of its legitimate legislative functions, to impose limitations and restrictions upon the discharge of purely judicial functions upon a distinct co-ordinate branch of the government which is alike independent of the two other co-ordinate branches of the State government—executive and legislative. The sovereign State, the people, may by constitutional amendment declare a subordination of one of these powers to another. But, until they do, the court can not recognize such subordination, or regard the surrender of the functions delegated to it by the constitution we have sworn to support, as otherwise than a breach of the sacred obligations we assume upon our induction into office.