S00G0523. IN RE ALLAN G. STROH et al.
(534 SE2d 790)

CARLEY, Justice.

Allan G. and Brenda Stroh (respondents) are Alabama residents who, having previously adopted T. M. G.'s half-sister, filed a petition to adopt T. M. G. once they discovered his existence. In the course of that adoption proceeding, the trial court ruled that Scott and Traci Edmondson (foster parents) could either intervene in the action or file a separate petition. Although the Department of Human Resources (DHR) intervened in respondents' case, the foster parents did not, but filed a separate adoption petition eleven months later. After an evidentiary hearing, the trial court denied each adoption petition in a separate order and thereafter denied the respondents' motion for reconsideration and refused to place T. M. G. in their custody while they pursue adoption proceedings in Alabama. The foster parents filed a new adoption petition and moved to consolidate that case with, and to intervene in, respondents' case. The trial court dismissed both motions, finding that it was without jurisdiction to entertain them, as they were filed subsequent to the final order in respondents' case. Respondents then appealed. Although the foster parents filed a brief as amicus curiae in that appeal, the only parties of record were respondents and DHR. The Court of Appeals affirmed in part, reversed in part, and remanded with direction that the trial court grant custody to respondents. *In re Stroh*, 240 Ga. App. 835 (523 SE2d 887) (1999). Only the foster parents petitioned for certiorari, which this Court granted. Respondents filed what is in effect a motion to vacate certiorari, on the ground that the foster parents are not aggrieved parties and, thus, have no standing. The foster parents

responded that they have proceeded as amicus curiae and should be permitted to appear as interested third parties under OCGA § 5-6-1.

It is this Court's prerogative to prescribe rules regarding certiorari. Indeed, the only rules of procedure for reviewing a decision of the Court of Appeals by the writ of certiorari are Rules 38 through 45 of this Court. *Hawes v. Dinkler*, 224 Ga. 785, 786 (1) (a) (164 SE2d 799) (1968). See also Ga. Const. of 1983, Art. VI, Sec. VI, Par. V; OCGA § 5-6-15; *Holliman v. State*, 175 Ga. 232 (2), (3) (165 SE 11) (1932). Rule 45 states that "appellant and appellee shall file briefs." This mandate implies the necessity for the participation of both opposing parties. The *Hawes* case involved a motion which, like that filed by respondents, requested this Court to vacate a writ of certiorari on the ground that the petitioner had no standing to complain of the judgment of the Court of Appeals and was not an "aggrieved party." *Hawes v. Dinkler*, supra at 786 (1). In that case, this Court did not vacate certiorari, but only because it concluded that the petitioner there was in fact an aggrieved party. *Hawes v. Dinkler*, supra at 787 (1) (b), (c). We have been unable to locate any precedent wherein this Court reviewed by certiorari a case which had no appellant, but instead only a non-party seeking the reversal of a judgment of the Court of Appeals.

The foster parents are not parties to this case, and never have been. Having long ago chosen to leave to DHR the burden of opposing respondents' adoption proceeding and request for temporary custody, they cannot attempt to intervene after the trial court has entered final judgment and DHR has decided not to petition for certiorari. See *Harvey v. Williams*, 572 A2d 149, 150-151 (Md. 1990). As for the foster parents' reliance on OCGA § 5-6-1, that code section permits the appearance of interested *third* parties *in addition to, and along with,* the plaintiffs and the defendants. Thus, the foster parents could appear in this case only if DHR had already petitioned for certiorari. The foster parents are indistinguishable from any other non-party who is dissatisfied with a Court of Appeals decision. If the foster parents are permitted to proceed with certiorari, then any non-party who assumes a position contrary to a Court of Appeals decision can petition this Court for certiorari.

Accordingly, we hold that the rules of this Court governing the grant of certiorari have not been satisfied and, therefore, the writ is vacated.

*Writ of certiorari vacated. All the Justices concur, except Benham, C. J., Fletcher, P. J., and Hunstein, J., who dissent.*

HUNSTEIN, Justice, dissenting.

"The foster parents are indistinguishable from any other non-party who is dissatisfied with a Court of Appeals decision." This is

what the majority says about the Edmondsons, the parties who currently have a petition pending in Brooks County for the adoption of T. M. G. and who have been T. M. G.'s exclusive caregivers for nearly five years. The Edmondsons are the parents in a family that is being torn apart by the Court of Appeals' ruling in this case since they, as the only parents T. M. G. has ever known, are the people from whom T. M. G. will be taken in order to be given to strangers. Yet the majority dismisses them by saying that they are not aggrieved parties. This conclusion by the majority ignores pending litigation, defies common sense and is unsupported by Georgia law.

The majority candidly admits there is no statutory or case authority to support its holding. It is clear that this Court has full authority to hear the Edmondsons' appeal if we so choose. In fact, we had already so chosen, when we granted their petition for writ of certiorari on May 1, 2000, a grant to which the author of the majority opinion dissented. My research verifies the majority's acknowledgment that nothing prohibits this Court from hearing the Edmondsons' appeal from the Court of Appeals' opinion.

Although the majority warps reason and ignores reality by trying to categorize the Edmondsons as total strangers to this appeal, the majority confutes this claim by discussing the procedural missteps which have bedeviled the Edmondsons' involvement in the Strohs' litigation. The majority intimates that the Edmondsons are somehow at fault for not being "proper" parties to this appeal, pointing out that the Edmondsons did not file their adoption petition timely, did not file a motion to intervene timely, and "chose to leave to DHR the burden of opposing [the Strohs'] adoption proceeding." The record, however, reveals that the Edmondsons have acted in good faith throughout this convoluted litigation and while they may have made technical errors, those errors do not justify depriving them of the opportunity to pursue this appeal in this Court.

The situation is thus: T. M. G. was born in January 1996 to an unfit mother. The mother was so unfit that to ensure the child's well being, DHR was forced within weeks of the child's birth to obtain a juvenile court order allowing it to assume custody of the child.[1] After the juvenile court order of March 1996 was obtained granting DHR custody of T. M. G., DHR placed the infant with the Edmondsons. T. M. G. was less than eight weeks old at the time. For nearly five years he has been raised by the Edmondsons, calling Mr. Edmondson "Daddy" or "Scott," Ms. Edmondson "Mama," and believing that Ms.

---

[1] Although the record on appeal does not contain the documentation setting forth the precise ground for DHR's intervention, the DHR attorney at a hearing stated to the superior court that the mother was on drugs and T. M. G. was not receiving medical treatment. See OCGA § 15-11-17 (a) (4).

Edmondson's two children are his own siblings.

T. M. G.'s mother was twenty-one years old when he was born and had three years earlier given birth to a daughter in Alabama. The Strohs, who live in Alabama, had adopted that child. Six months after T. M. G. was born, the Strohs learned of his birth through a go-between, an Alabama woman who had been involved in the earlier adoption. There is no indication in the record that T. M. G.'s natural mother, either during her pregnancy or after his birth while she still retained custody of the child, made any attempt to contact the go-between in order to ascertain the Strohs' interest in her newest infant. Instead, the Strohs contacted the uncaring mother, four months *after* DHR had taken custody of the child. The Strohs knew DHR had custody of the child because when they filed their petition to adopt T. M. G. in February 1997, over a year after his birth, they obtained a TRO preventing DHR from taking any action in regard to the child. Because of the TRO, the termination proceedings DHR had initiated against the mother in juvenile court were stayed.[2] Despite knowing DHR, rather than the mother, had legal custody of the child, the Strohs nevertheless in March 1997 obtained adoption papers from the unfit mother, but see *O'Neal v. Wilkes*, 263 Ga. 850, 851 (1) (439 SE2d 490) (1994) (the "first essential of a contract for adoption is that it be made between persons competent to contract for the disposition of the child"), and amended their adoption petition to assert that the matter was now a private adoption. In fact, the Strohs did not serve their petition on DHR or the Edmondsons, forcing DHR to intervene in order to assert its interest in a child in its legal custody. Only after the Echols Superior Court stayed the matter was DHR able to continue in juvenile court with its termination proceeding where it obtained a court ruling regarding what had already been factually established, namely, that the mother was not fit to be T. M. G.'s parent. That ruling was not appealed.

The Edmondsons also filed an adoption petition in Echols County and the trial court heard both their petition and the Strohs' petition. The Edmondsons' petition contained technical flaws and was correctly dismissed. No appeal was taken because the court's legal conclusions were unassailable. The Strohs' petition was also dismissed and while their motion for reconsideration was pending, the Edmondsons filed another adoption petition with the technical flaws corrected; the petition was filed October 15, 1998 in T. M. G.'s county of domicile, Brooks County. On December 11, 1998, the Echols County court granted the Strohs' MFR. There would be no reason for

---

[2] The termination proceedings were in addition to the adoption papers the mother signed in September 1996, after DHR's efforts to persuade T. M. G.'s mother to care for her son failed.

the Edmondsons to be notified of this ruling, yet somehow they learned of it and 18 days after the Strohs' MFR was granted, the Edmondsons filed their motions to intervene in the revitalized suit or alternately to consolidate the two adoption petitions. These motions were untimely only because the Echols County court, acting with unusual swiftness, had entered judgment against the Strohs only four days after granting the Strohs' MFR. The denials of the Edmondsons' motions to intervene and consolidate were thus correct and the Edmondsons had no basis to challenge those rulings on appeal.

The Strohs continued their relentless pursuit of T. M. G. by appealing the denial and dismissal of their adoption petition. The Strohs served both DHR and the Edmondsons. The appeal involved the question whether an unfit mother who does not have custody of her child because DHR was forced to take the child for his own safety can nevertheless legally contract to allow third parties to adopt the child; there was also the issue of DHR's standing to intervene in the private adoption under such a factual scenario. Despite these important issues, DHR for unspecified reasons declined to participate in the appeal and notified the Court of Appeals of that decision. Thus, it fell to the Edmondsons in this Catch-22 situation to represent T. M. G.'s interests in the Court of Appeals, which they did at their own personal expense as amicus parties. The Edmondsons' right to be involved in the appeal was so obvious that when the Strohs served the Edmondsons' attorney with copies of its original brief and enumerations of error, they denominated him as "opposing counsel." Aside from the familial bond the Edmondsons have with T. M. G., their involvement was also justified by the effect the appeal could have on their petition to adopt T. M. G. which was pending in Brooks County at the time the Strohs filed their appeal and which has currently been stayed.

The Court of Appeals rendered an opinion which, inter alia, ordered T. M. G. to be taken from the only parents he has ever known to be handed over to strangers. The Edmondsons moved for reconsideration of the opinion. Despite the amicus status which the Strohs now assert renders the Edmondsons incapable of pursuing this appeal,[3] the Strohs raised no objection before the Court of Appeals to the Edmondsons' motion. Nor did the Court of Appeals deem it inappropriate to rule on a motion for reconsideration filed by parties

---

[3] At no point during the proceedings for writ of certiorari did the Strohs raise any objection to the Edmondsons' standing. Instead, only after the grant of the writ, the denial of the Strohs' motion for reconsideration, and the denial of another motion to dismiss do the Strohs now contend for the first time that this Court should dismiss the granted cert. petition on the basis that the Edmondsons lack standing to petition this Court for relief.

"indistinguishable from any other non-party who is dissatisfied with a Court of Appeals decision," as the majority phrases it. The reason why no challenge was previously made to the Edmondsons' participation and the reason why the Strohs' challenge now is unsustainable is blindingly obvious: the Edmondsons are aggrieved parties here. They occupy the unique position as the caregivers for T. M. G. They are second only to T. M. G. as the persons most deeply affected by the Court of Appeals' ruling. They are as inextricably intertwined in this litigation as the Strohs and there is no basis in the law or equity to deny them the right to pursue this appeal.

This is the first opportunity the Edmondsons have had to contest a ruling initiated in the Court of Appeals that deprives them of custody of T. M. G. and interferes directly with their adoption proceeding that is currently pending in Brooks County. The Edmondsons have asked this Court to correct a lower court's opinion which directly contradicts our holding in *Stills v. Johnson*, 272 Ga. 645 (533 SE2d 695) (2000) and allows an unfit mother to release a child not in her custody to third parties without providing the State with an opportunity to challenge the disposition of a ward in its custody. The Edmondsons have asked only that we allow one court, for the first time in all the years of litigation over this child, to consider factually whether it is in T. M. G.'s best interests to be removed from the Edmondsons' home. No court has considered what is best for T. M. G., even though he is the one party here who has the most to lose. The majority's ruling that the Edmondsons, T. M. G.'s de facto parents and exclusive caregivers, lack standing to raise the matter before us serves only to ensure that no court ever will consider what is best for this child.

The majority is mistaken when it states that the Edmondsons are "indistinguishable" from other dissatisfied non-parties: the true strangers to this litigation are the Strohs, who claim T. M. G. solely on the strength of a piece of paper executed by an unfit, non-custodial mother and who have demonstrated their utter disregard for the child's well being by selfishly ignoring the damaging consequences to T. M. G. of taking him from the only home he has ever known and the people, de facto parents and siblings, who love him. The Edmondsons are aggrieved parties in every sense of the word: they have parented T. M. G. for nearly five years; they have a petition pending since October 1998 for his adoption; they have challenged the Strohs' claim to control T. M. G.'s fate when DHR refused to defend the child. There is no legal, factual, equitable or moral justification for the majority's callous refusal to entertain the Edmondsons' appeal. Because this Court has full authority to hear this petition and no valid reason to refuse to exercise that authority in this case, I dissent to the majority's vacation of the grant of the Edmondsons' petition for writ of certiorari.

I am authorized to state that Chief Justice Benham and Presiding Justice Fletcher join in this dissent.

DECIDED SEPTEMBER 11, 2000 —
RECONSIDERATION DENIED OCTOBER 12, 2000.

*Galen A. Mirate,* for Edmondson et al.
*George M. Saliba II, Gregory A. Voyles,* for Stroh et al.