## 38873. DURDEN v. THE STATE.

HILL, Chief Justice.

Defendant was found guilty of felony murder, burglary and aggravated assault in connection with a break-in at Barfield's Bait and Tackle Shop in Houston County. He was sentenced to life in prison on the felony murder conviction. Evidence introduced at trial showed that the perpetrator had pried off a vent cover on the roof of the store and dropped through to the floor. He then set off a movement-sensitive alarm in the owner's home behind the store. The owner responded to the alarm by notifying police and going to the store. The owner and the intruder exchanged shots with the owner wounding the intruder. The owner was not wounded in the exchange but within minutes after the police arrived he had a heart attack and died. Deceased had suffered from arteriosclerotic cardiovascular disease. The medical examiner testified that the cause of death was cardiac arrest caused by the victim's small coronary arteries and the stress of events before the victim's death.

Shortly after the events at the bait shop, defendant was admitted to the emergency room of a local hospital for treatment of gunshot wounds. After being notified of this, the police went to the hospital. They first spoke with defendant's wife who identified a green hat found on the bait shop floor as similar to one belonging to her husband. In response to questions by police, Mrs. Durden said her husband and a friend had been loading ammunition that evening. Between 10:00 and 10:30 defendant took the friend home. Defendant arrived home shortly after the time of the burglary, screaming and bleeding from the gunshot wound. Mrs. Durden drove him to the hospital immediately.

After advising him of his Miranda rights, investigators began questioning defendant regarding his knowledge of the incident. Defendant told the investigating officers he had been shot while walking across the street from Barfield's store. He was returning

home after an evening at the Duck's Breath Saloon where he had become too intoxicated to drive. He was then asked if he recognized the green baseball cap; he replied that it was similar to one he wore. When asked how his hat got on the floor inside Barfield's, the defendant made no response.

After talking with defendant, police took possession of several articles of defendant's clothing and examined defendant's car and apartment with defendant's wife's permission. The next day officers found guns taken from the store under shrubbery near defendant's apartment.

1. Defendant contends his warrantless arrest was unlawful under federal and state law and that the results of the search and seizure of his clothing should have been suppressed. Defendant claims he was arrested when police began questioning him in the emergency room. He asserts, and the investigating officer conceded on cross-examination, that he was not free to leave had he attempted to do so.

There are two focal points in determining whether a warrantless arrest is valid. The first is referred to as the "probable cause" test. This test determines whether the arrest met the requirements of the federal constitution. Under this standard an arrest is constitutionally valid if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense. Beck v. Ohio, 379 U. S. 89, 91 (85 SC 223, 13 LE2d 142) (1964). Evidence obtained in connection with an arrest which does not meet this requirement is subject to the federal exclusionary rule and will not be admissible at trial.

The police officers here had ample evidence of probable cause to arrest defendant without a warrant. They knew a burglary and an aggravated assault had been committed and the perpetrator of these crimes had been shot. The perpetrator had left his hat in the store. Defendant was in the emergency room shortly thereafter suffering from a gunshot. Defendant's wife identified the hat as similar to one worn by defendant. We find the evidence meets the federal standard of probable cause; i.e., the facts and circumstances within the knowledge of the arresting officers were sufficient to warrant a prudent man in believing that the defendant had committed the offenses.

The second focal point is the Georgia law. Code Ann. § 27-313 (a) (1) creates a statutory exclusionary rule for searches and seizures without a warrant. Code Ann. § 27-207 lists three situations in which a warrantless arrest is permissible: (1) where the offense is committed

in the presence of the arresting officer; (2) where the offender is trying to escape; or (3) under other circumstances where there is likely to be a failure of justice if the officer is required to delay the arrest until a warrant is obtained.

We find that these dual inquiries, one under federal law and one under state law, serve no useful purpose and result in complicating the law in an area which needs to be readily understood by law enforcement officers. Hence we hold that if an officer, while in the presence or vicinity of the accused, acquires "probable cause" (federal) to arrest the accused outside his or her home, and fails to make such arrest, there is likely to be a failure of justice as a matter of law if the officer is required to delay the arrest until a warrant is obtained. That is to say, we find the state rule to be the same as the federal rule. An arrest and search, legal under federal law, are legal under state law. Thus, defendant's motion to suppress the evidence was properly denied.

2. Defendant also lists as error the trial court's determination that he had waived his rights under Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). He claims any purported waiver was not knowingly and voluntarily made because he was under the influence of alcohol and drugs and was suffering a great deal of pain.

When officers questioned defendant at the hospital, he made coherent, logical statements. The officers testified they determined from defendant's demeanor that he understood his rights and his actions in waiving those rights. We find no error in the trial judge's determination that the defendant's statement was admissible.

3. In the state's direct case, the investigating officer testified about the conversation with defendant at the hospital. The officer was allowed to testify over defendant's objection that defendant made no response to his question, "How did your hat get in Barfield's store?" Defendant enumerates this as error.

Here defendant had been advised of his right to remain silent and warned that any statement he made could be used against him. He answered several of the officer's questions but declined to answer one. We find that evidence of defendant's decision not to answer is inadmissible and should have been excluded upon objection. The defendant was advised of his right to remain silent, and the prosecution may not use against him the fact that he exercised that right. Miranda v. Arizona, supra, 384 U. S. at 468 (fn. 37); Doyle v. Ohio, 426 U. S. 610 (96 SC 2240, 49 LE2d 91) (1976); and United States v. Hale, 422 U. S. 171 (95 SC 2133, 45 LE2d 99) (1975); see also *Howard v. State,* 237 Ga. 471 (228 SE2d 860) (1976).

The recent United States Supreme Court case of Fletcher v. Weir, —— U. S. —— (102 SC 1309, 71 LE2d 490) (1982), is

inapplicable to the facts here. Weir had not been advised of his Miranda rights, and the state sought, on cross-examination, to impeach his testimony at trial claiming self-defense by his failure to assert that defense following his arrest. Here the defendant had been advised of his Miranda rights, and the evidence of silence was presented in the state's direct case, not to impeach defendant's trial testimony.

4. Defendant contends the evidence was insufficient to prove he was the perpetrator of the burglary and the aggravated assault.

The evidence showed a knife in defendant's pocket had tar on it similar to the tar on the vent cover pried off by the perpetrator. Defendant's jacket collar had insulation fibers stuck to it similar to the insulation in the roof of the store. Defendant's hat was found inside Barfield's shop. The victim told police he hit the perpetrator with at least one shot. Defendant was in the hospital emergency room for treatment of gunshot wounds shortly thereafter. Blood found in the store was consistent with defendant's, and experts testified that only 7 out of 10,000 people would have blood consistent with this. Defendant admitted being shot in the vicinity of Barfield's store. A witness observed a white male with dark hair and a beard running away from Barfield's shop, cradling a gun in his right hand, and driving off in a car a description of which fit defendant's car. Defendant had a beard at that time. Guns taken during the burglary were found near defendant's apartment. The jury clearly was authorized to find from this that defendant was the perpetrator.

Because of the overwhelming evidence linking defendant with this crime, the error in Division 3 is harmless beyond a reasonable doubt, as are the errors referred to in enumerations 2 and 6.

5. Defendant argues that the state did not establish the burglary and the aggravated assault as the proximate cause of the victim's death so as to authorize his conviction for felony murder. He suggests two bases for this proposition: (1) defendant inflicted no physical or corporeal injury to the victim; or (2) to find that the burglary and aggravated assault here caused the victim's heart attack is to use a "but for" test of causation.

At early common law some type of physical injury was required for imposition of criminal responsibility for homicide. 40 CJS, Homicide, § 11. This rule may have been designed to prevent prosecutions for witchcraft. In any event, the modern tendency is to disregard this mechanical rule and to determine criminality according to the degree of reasonable proximity between the unlawful act and the death. Anno.: Homicide by Fright or Shock, 47 ALR2d 1072 at 1073. We hold that a physical injury is not required for criminal responsibility for homicide.

Defendant argues he should not be responsible for the victim's death because the victim was suffering from cardiovascular disease, was overweight, was not under a doctor's care and had a life expectancy of not more than 2 years. In *Ward v. State,* 238 Ga. 367, 369 (233 SE2d 175) (1977), quoting from *Wilson v. State,* 190 Ga. 824, 829 (10 SE2d 861) (1940), this court said: "Where one inflicts an unlawful injury, such injury is to be accounted as the efficient, proximate cause of the death, whenever it shall be made to appear, either that (1) the injury itself constituted the sole proximate cause of the death; or that (2) the injury directly and materially contributed to the happening of a subsequent accruing immediate cause of the death; or that (3) the injury materially accelerated the death, although proximately occasioned by a pre-existing cause." Having determined that a physical injury is not required, and this being a felony murder case, the word "felony" may be substituted for "injury" in the above quotation and the rule may be stated as follows: Where one commits a felony upon another, such felony is to be accounted as the efficient, proximate cause of the death whenever it shall be made to appear either that the felony directly and materially contributed to the happening of a subsequent accruing immediate cause of the death, or that the injury materially accelerated the death, although proximately occasioned by a pre-existing cause.

*State v. Crane,* 247 Ga. 779 (279 SE2d 695) (1981), urged by defendant is inapposite. In *Crane* the deceased was a burglar who was shot by the intended burglary victim. Here the defendant's actions were directed at the deceased, and the question is whether those actions (felonies) were the cause of death.

It could be argued that there was a "reasonable hypothesis" that the victim died from cardiac arrest not caused by the burglary and aggravated assault. See Code § 38-109. The medical examiner testified that the cause of death was cardiac arrest caused by the victim's small coronary arteries and the stress of events before the victim's death. The jury was authorized to find the defendant guilty of felony murder beyond a reasonable doubt.

6. During closing argument, the district attorney argued that defendant's explanation of how he was shot was ludicrous and against the law of physics. Defendant claimed he was walking across the street from Barfield's when he was struck in the back by a bullet moving in an upward direction. Two witnesses testified that this set of facts was physically possible. Defendant claims the district attorney's statement is against the evidence and improper. We disagree. The state was merely arguing the unlikelihood that defendant's version of the facts occurred. In closing arguments each side is permitted to make any argument which is reasonably

suggested by the evidence.

7. Defendant's final enumeration of error is the trial court's failure to grant his motion for a change of venue. Defendant claimed that pretrial publicity of the crime made it impossible for him to receive a fair trial. A motion for change of venue is addressed to the discretion of the trial court, and a denial of such motion will be overruled only where there is an abuse of such discretion. See *Johnson v. State,* 242 Ga. 649, 655 (250 SE2d 394) (1978); and *Presnell v. State,* 241 Ga. 49, 53 (243 SE2d 496) (1978). We have reviewed the newspaper accounts which defendant alleges required a change of venue, and we find no abuse of discretion by the trial court in not granting the motion.

*Judgment affirmed. All the Justices concur, except Bell, J., not participating.*

DECIDED NOVEMBER 16, 1982 —
REHEARING DENIED NOVEMBER 29, 1982.

*Harry J. Fox, Jr.,* for appellant.
*G. Theron Finlayson, District Attorney, Edward D. Lukemire, Assistant District Attorney, Michael S. Bradley,* for appellee.