## 67577. HORTON v. THE STATE.

BIRDSONG, Judge.

Calvin Horton was convicted of credit card theft and sentenced to serve three years. He brings this appeal enumerating three alleged errors. *Held*:

1. Horton's first two enumerations directly relate to the regularity or lawfulness of his arrest. The facts surrounding Horton's arrest reflect the following. On the afternoon of September 16, 1982, one Dodson entered an A&P grocery store and sought to cash a check. The manager recognized the check as one of a series that had been stolen. The manager sought to delay the encashment of the check and placed a call for the police to arrest the forger. Dodson became suspicious and fled from the store. The manager followed Dodson outside and observed Dodson walk rapidly diagonally across the store parking lot. He observed a second man on the side of the parking lot who walked toward Dodson or at least walked in a direction that would cause the paths of the two men to intersect. The two men met momentarily in the parking lot and the manager could see that they conversed. The two men then departed the parking area in diverging paths.

A police officer answering the call heard a description of a black man dressed in dark clothes walking away from the A&P parking lot. The officer almost immediately observed a man fitting that description. The officer stopped the person and asked if the man would consent to return to the A&P. The individual consented to return and upon returning to the store was positively identified as the person whom the forger had contacted and spoke with in the parking lot. There is no contention that this was not Horton, who admitted being in contact with Dodson and speaking with Dodson in the parking area. After Horton was identified as being the second man in the parking lot, he was advised of his Miranda rights and placed under arrest for attempted forgery. Horton was transported to the police station where an inventory was made of his possessions including his wallet. The wallet disgorged a credit card made in another person's name. Upon being asked to explain his possession, Horton stated that the card belonged to a lady friend and that he was holding it for her until she could reclaim it. Horton ultimately was charged with credit card theft. No indictment was ever returned against Horton for the attempted forgery.

On the basis of the above facts, Horton maintains there was no probable cause for his arrest, though he concedes there may have been an articulable suspicion warranting his temporary detention. Once that detention extended beyond a reasonable and short period, Horton argues that he was arrested and that arrest was without prob-

able cause. See Terry v. Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889). Continuing his argument, Horton maintains that the illegal arrest infected the inventory of his wallet and his subsequently made statement.

While we would agree that the officers did not have sufficient reasonable grounds (nor did the store manager) for suspecting that Horton personally attempted to pass or forge and pass a check in the store, his personal forgery was not the predicate for the appellant's participation in the crime involved. There is no dispute that Dodson attempted to pass or forge a check. He entered a guilty plea thereto in a separate trial. Thus the officers were not dealing with a mere articulable suspicion that a crime might be in progress. There was proof positive that a crime had occurred. The only question was whether there was probable cause to believe that Horton was aiding and abetting Dodson in the commission of that crime.

The officer effecting the arrest was informed that an attempt to pass a forged check had been made. The forger had walked directly to and conversed with a second male immediately after fleeing the confines of the store. These two men then walked away in diverging paths. The appellant had been unequivocally identified as the apparent aider and abettor. We will not hold as a matter of law that under such circumstances the conclusion by the arresting officer that Horton was at least facially an aider and abettor in a felony was unreasonable. In fact, we believe that had the officer not taken Horton into custody under such circumstances at least until his innocence was reasonably established, the essence of good crime prevention and detection would have been thwarted. See *Stiggers v. State*, 151 Ga. App. 546, 547 (1) (260 SE2d 413). Once Horton had been arrested and transported to the police station, it was an accepted police practice to inventory his personal effects prior to incarceration either to prevent the introduction of contraband into the jail or to protect the police from spurious claims for lost or stolen personal belongings of the prisoner. *State v. Travitz*, 140 Ga. App. 351, 352 (231 SE2d 127); *Lee v. State*, 129 Ga. App. 82, 83 (198 SE2d 720). Once a lawful arrest had been made, the ensuing search of Horton's wallet was reasonable and proper. Thus the disclosure of the credit card was the product of a lawful inventory search. Thereafter Horton's statement, made only after an admittedly sufficient Miranda warning, likewise became admissible. Based upon the foregoing, we reject the first two enumerations of error raised as being without merit.

2. In this third enumeration, Horton argues that the trial court erred in a charge to the jury concerning the weight to be attached to the pretrial statement.

The evidence adduced from the interrogating officer showed that appellant's statement was oral. Apparently, the oral statement was

reduced to notes by the officer. However, it is clear that the statement was not tape recorded. After the jury had been deliberating for a period of time, the jury inquired if it was necessary that the statement be in writing or that the appellant acknowledge the authenticity of a statement or the notes taken by the officer, if there were such notes, by signing the same. The trial court charged the jury that it must first determine if there was in fact a statement, if so whether it was voluntary. The court advised the jury that a statement could be oral or in writing. The jury's responsibility was to decide if a statement was made. A general charge on credibility was given to the jury. Appellant does not dispute the applicability of the court's charge. He complains that the trial court should have added in the answer to the jury that the absence of a tape recorded statement or the failure to have a defendant sign a statement goes to the credibility of the statement.

Appellant has cited no cases imposing such a duty upon the State and candidly concedes there appear to be no such cases. While we observe that such an attack on credibility might be appropriate argument going to the weight to be attached to a statement (and weight was included in the court's charge on credibility), the issue for the jury is a statement's voluntariness and whether the defendant made a statement at all, i.e., its admissibility. The charge of the court correctly and fully covered those aspects. We will not impose an additional burden upon the State to tape record every statement or to obtain the signature of the defendant and thus create a new principle of law that in the absence thereof a question of credibility arises which should be the basis of a separate credibility charge. On a charge as to a pretrial statement, it is sufficient that the jury be required to find that the statement is that of the accused and that it was voluntarily made. No statute provides a weight-of-the-evidence test to be applied by the jury. See *Jackson v. State*, 239 Ga. 449, 450 (238 SE2d 31). We find no merit in this enumeration.

*Judgment affirmed. McMurray, C. J., Deen, P. J., Quillian, P. J., and Banke, P. J., concur. Carley, Sognier, Pope, and Benham, JJ., dissent.*

DECIDED JULY 2, 1984.

*Gerald P. Word*, for appellant.

*Arthur E. Mallory III, District Attorney, Robert H. Sullivan, Blanchette Holland, Assistant District Attorneys*, for appellee.

CARLEY, Judge, dissenting.

I respectfully dissent from the majority's determination that appellant's arrest was lawful. As is implicit in the majority's discussion of the appellant's enumerations in this connection, this case is en-

tirely dependent upon the determination of the validity of the arrest because if the arrest is invalid, the evidence obtained from the search of appellant's wallet should have been suppressed and appellant's subsequent statements should have been excluded.

In *Durden v. State*, 250 Ga. 325 (297 SE2d 237) (1982), our Supreme Court attempted to clarify the apparent overlap of criteria for lawfulness of a warrantless arrest under the federal rules and as prescribed by OCGA § 17-4-20. In *Durden*, the Supreme Court stated: "We find that these dual inquiries, one under federal law and one under state law, serve no useful purpose and result in complicating the law in an area which needs to be readily understood by law enforcement officers. Hence we hold that if an officer, while in the presence or vicinity of the accused, acquires 'probable cause' (federal) to arrest the accused outside his or her home, and fails to make such arrest, there is likely to be a failure of justice as a matter of law if the officer is required to delay the arrest until a warrant is obtained. That is to say, we find the state rule to be the same as the federal rule. An arrest and search, legal under federal law, are legal under state law." *Durden v. State*, supra, 327.

The federal rule is that "an arrest is constitutionally valid if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense. Beck v. Ohio, 379 U. S. 89, 91 (85 SC 223, 13 LE2d 142) (1964)." *Durden v. State*, supra, 326.

Therefore, the arrest in this case must be judged under the above-stated federal rule. Applying that federal rule to the facts of this case leads me to the inescapable conclusion that there was absolutely no lawful basis for the warrantless arrest of appellant. The sole connection between the appellant and the only crime then being investigated, attempted forgery, was the momentary meeting of appellant and Dodson in the parking lot. In fact, appellant was arrested for attempted forgery immediately upon his being identified as being "the second man in the parking lot." Surely, a mere brief conversation in a public place by one person with someone who has, in a separate place, committed or attempted to commit a crime is not alone "sufficient to warrant a prudent man in believing that [such person] had committed or was committing an offense." *Durden v. State*, supra, 326. Because I firmly believe that appellant's arrest was unlawful, I believe that the conviction should be reversed and, therefore, I dissent.

I am authorized to state that Judge Sognier, Judge Pope and

Judge Benham join in this dissent.