S00G0606. THE STATE v. TYSON.
S00A2019. TYSON v. THE STATE.
(544 SE2d 444)

FLETCHER, Presiding Justice.

A jury convicted Samuel Seymore Tyson of child molestation, but the Court of Appeals of Georgia reversed on the grounds that the trial court should have granted Tyson's motion to suppress evidence.[1] We granted the writ of certiorari to consider whether the court of appeals correctly concluded that Tyson's warrantless arrest was illegal and therefore the evidence seized incident to his arrest should have been suppressed. Addressing first our jurisdiction to hear this case, we hold that under our state constitution the State of Georgia may seek discretionary review in the Supreme Court of any decision by the court of appeals in the defendant's favor in a criminal case. Because we agree with the state that the arresting officer had probable cause to arrest Tyson, we reverse.

1. Tyson has filed a motion to dismiss the writ of certiorari as improvidently granted, citing OCGA §§ 5-7-1 to 5-7-3, and sought to be released on bail under OCGA § 5-7-5. These code sections provide

---

[1] *Tyson v. State*, 241 Ga. App. 288, 291 (526 SE2d 603) (1999).

statutory authority for the state to appeal decisions in criminal cases.

Historically, the prosecution in the United States has had a limited right to appeal in criminal cases.[2] This general principle is based on the fundamental rule of the common law embodied in the Fifth Amendment to the United States Constitution: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."[3] In 1973, the Georgia General Assembly enacted OCGA § 5-7-1, which gives the state a limited right to appeal certain orders, decisions, and judgments in criminal cases to the court of appeals or supreme court, and OCGA § 5-7-3, which extends the same right to the state in proceedings by certiorari.[4] This legislation was part of a national trend to broaden the prosecution's right to appeal in criminal cases consistent with national standards being developed by the American Bar Association.[5]

The national standards distinguish between the prosecution's right to appeal from a trial court decision and its right to seek discretionary review of an intermediate appellate court's opinion in favor of a criminal defendant. Both the ABA's Standards Relating to Appellate Courts and Standards Relating to Criminal Justice make clear that the restrictions on the state's right to appeal from a trial court's decision should not apply to the state's right to appeal from an intermediate appellate court's decisions.[6] "Where more than one level of appellate review exists, whenever an intermediate court has held in favor of a defendant-appellant, the prosecution should be permitted to seek further review in the highest court."[7]

Despite these standards, this Court has analyzed the state's right to seek review of court of appeals' decisions in the same way as the state's right to appeal from trial court decisions. In *State v. B'Gos*,[8] our first decision considering the state's right to petition for certiorari, we held that we did not have jurisdiction to entertain the state's petition in a criminal case. Although a 1916 constitutional amendment gave the Supreme Court authority "to require by certiorari or otherwise any case to be certified to the Supreme Court from the Court of Appeals for review and determination," the majority in

---

[2] See *Eaves v. State*, 113 Ga. 749, 753-754 (39 SE 318) (1901) (no writ of error lies in favor of the state in a criminal case).

[3] See *State v. Jones*, 7 Ga. 422, 424 (1849); STANDARDS FOR CRIMINAL JUSTICE 21-1.4 commentary at 21-19 (2d ed. 1986) (double jeopardy clause of United States Constitution and similar clauses in state constitutions are a primary constraint on the power of the prosecution to appeal).

[4] See 1973 Ga. Laws 297 (codified at OCGA §§ 5-7-1 to 5-7-5).

[5] See STANDARDS FOR CRIMINAL JUSTICE commentary at 21-18 to 21-19.

[6] See STANDARDS RELATING TO APPELLATE COURTS § 3.10 (a) (ii) & (c) (1994); STANDARDS FOR CRIMINAL JUSTICE 21-1.4 (a) & (b).

[7] STANDARDS FOR CRIMINAL JUSTICE 21-1.4 (b).

[8] 175 Ga. 627 (165 SE 566) (1932).

○

*B'Gos* concluded that "any case" did not include the state in a criminal proceeding.[9] Yet, as the dissent in *B'Gos* pointed out, the express language of the constitutional amendment "conferred upon the Supreme Court the right to review by certiorari any and all judgments rendered by the Court of Appeals" without exception and did not restrict the application for review to defendants in criminal cases.[10]

In 1973, the Georgia legislature enacted OCGA §§ 5-7-1 to 5-7-5 giving the state the right to file a direct appeal or take a proceeding by certiorari in certain criminal cases. Following the enactment of these statutes, this Court for the first time rejected a motion to dismiss the state's application for certiorari in a criminal case.[11] Subsequently, we held in *State v. Moore*[12] that we had jurisdiction to entertain the state's petition for certiorari after the court of appeals reversed a criminal conviction, citing our constitutional and statutory authority.[13] Since the passage of the 1973 act, "this court has consistently granted the state's applications for the writ in criminal cases when this court has deemed the application of the state to be meritorious."[14]

The Constitution of the State of Georgia of 1983 gives the Supreme Court the power to "review by certiorari cases in the Court of Appeals which are of gravity or great public importance."[15] This constitutional provision places no limit on this Court's certiorari jurisdiction. As a result, we have jurisdiction to review any decision of the court of appeals by certiorari so long as the case presents an issue of great concern, gravity, and importance to the public.[16] Implicit in this right to review any case by certiorari is the state's right to seek our review by certiorari of any decision of the court of appeals. The state may exercise this right because a defendant's constitutional right against double jeopardy is not implicated when the state seeks discretionary review of an adverse decision by the court of appeals in a criminal case.

Although we have previously relied on OCGA §§ 5-7-1 to 5-7-3 as the basis for our jurisdiction when the state seeks review of a court of appeals' decision, our discretionary review powers are not limited to

---

[9] Id. at 628-629.

[10] Id. at 639-640 (Russell, C. J., dissenting).

[11] See *State v. Gould*, 232 Ga. 844, 845 (209 SE2d 312) (1974) (rejecting defendant's argument that applying the 1973 act to a crime committed prior to its enactment was an ex post facto law in violation of the federal and state constitutions).

[12] 237 Ga. 269 (227 SE2d 241) (1976).

[13] See id. at 272.

[14] Id. at 272-273.

[15] Ga. Const. art. VI, sec. VI, para. V; see OCGA § 5-6-15.

[16] See Ga. Sup. Ct. R. 40.

the specific situations enumerated in these code sections. To interpret the statutes as placing a limit on this court's constitutional right to review cases would allow the legislative branch to restrict the power of the judicial branch in possible violation of the separation of powers.[17] Moreover, limiting this court's discretionary review by certiorari would have the effect of making the court of appeals the court of last resort in certain criminal cases, despite the importance of the issues to the public.

Therefore, we hold that the constitutional provision providing for the Supreme Court to review by certiorari cases in the court of appeals gives the state the right to file a petition for certiorari for the review of any decision by the court of appeals in the defendant's favor in a criminal case. We overrule our decision in *B'Gos* and other cases where we have held that the state did not have the authority under our constitution to seek certiorari from decisions of the court of appeals.[18] Contrary to the dissent's position, our holding does not render OCGA § 5-7-3 meaningless since it still applies to cases filed under chapter four of title five, which governs certiorari to superior courts.

2. After we granted the state's petition for certiorari, Tyson moved to be released on bail. We conclude that the trial court did not abuse its discretion in denying Tyson's motion and affirm.

3. The court of appeals reversed the jury's verdict of guilty on the grounds that there was no probable cause for the warrantless arrest of Tyson and, therefore, the evidence obtained in the second search of his van should have been suppressed. A warrantless arrest is valid if there is probable cause to arrest. Probable cause exists "if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense."[19]

We conclude that the police officer in this case had probable cause to arrest the defendant without a warrant. At the time Tyson was arrested, the officer knew that three people had reported seeing a man repeatedly fondle a young girl, two of the complainants had identified Tyson as the man molesting the child, and Tyson had admitted being accused of child molestation in the past, although he

---

[17] See Ga. Const. art. I, sec. II, para. III.
[18] See *State v. Vaughn*, 207 Ga. 583 (63 SE2d 357) (1951); *State v. Taylor*, 175 Ga. 642 (165 SE 733) (1932).
[19] *Durden v. State*, 250 Ga. 325, 326 (297 SE2d 237) (1982); see *Beck v. Ohio*, 379 U. S. 89, 91 (85 SC 223, 225, 13 LE2d 142) (1964).

denied committing the act. In addition, the officer knew that Tyson's van, which the officer had entered with Tyson's consent, contained used latex gloves, a jar of petroleum jelly, several pairs of female underpants, and three loaded firearms, even though Tyson had said that there were no weapons in the van. Finally, the officer also knew that the alleged victim, her mother, and her grandfather were on their way to the police station to talk with police. The fact that the officer did not think he had probable cause to arrest is not controlling.[20] Since the officer knew facts and circumstances sufficient to warrant a prudent person to believe that Tyson had committed an offense, the officer was authorized to arrest Tyson without a warrant. Because the arrest was legal, the trial court did not err in denying Tyson's motion to suppress and admitting the evidence seized from the van.

4. The court of appeals also ruled that much of the sexually explicit material found in Tyson's van was inadmissible under our decision in *Simpson v. State*.[21] In that case, we held that evidence of sexual paraphernalia found in the defendant's possession is inadmissible in a prosecution for a sexual offense unless it can be linked to the crime charged. Since Tyson failed to object to the introduction of most of this evidence at trial, he did not preserve the issue for appeal.[22] As for the two items of evidence to which Tyson did object as irrelevant, the possession of photographs of nude young girls can be linked to the crime of molestation of a young girl; we decline to reverse Tyson's conviction based on the possibility that the other evidence, a nudist camp magazine, could not be linked to the crime charged.

*Judgment affirmed in Case No. S00A2019. All the Justices concur, except Benham, C. J., who dissents. Judgment reversed in Case No. S00G0606. All the Justices concur.*

CARLEY, Justice, concurring.

I fully agree with Divisions 1 and 3 of the majority opinion. I also agree with the majority's holding in Division 2 that the trial court did not err in denying Tyson's motion to be released on bail. I take this opportunity to express my opinion that one in Tyson's position could clearly seek bail pursuant to OCGA § 17-6-1 (e). I think that a person in like circumstances should be able to seek bail pursuant to that statute because, as a result of the Court of Appeals' reversal of his conviction, such a defendant is in the same position as a defendant

---

[20] Cf. *Morgan v. State*, 195 Ga. App. 732, 734-735 (394 SE2d 639) (1990).
[21] 271 Ga. 772 (523 SE2d 320) (1999).
[22] See *Williams v. State*, 267 Ga. 308 (477 SE2d 570) (1996).

who is under indictment, but who has not yet been tried. Under that statutory provision, the defendant would have the initial burden of production, but the State would bear the burden of persuasion. See *Ayala v. State*, 262 Ga. 704, 705 (1) (425 SE2d 282) (1993).

Furthermore, a criminal defendant such as Tyson, who has obtained a reversal from which the State has sought certiorari, is in the same position as, and must be treated in a consistent manner with, a defendant who has procured a favorable trial court ruling which the State has appealed pursuant to OCGA § 5-7-1. In the latter situation, the defendant is entitled to seek release on reasonable bail pursuant to OCGA § 5-7-5. Because that statute does not itself provide any criteria upon which to base the decision to grant or deny bail, a trial court asked to make such a decision must apply the same prerequisites found in OCGA § 17-6-1 (e) which it would apply where, as here, the State has petitioned for certiorari.

In my opinion, therefore, a criminal defendant has a right to bail under the circumstances set forth in OCGA § 17-6-1 (e), whenever the State initiates an appeal or petitions for certiorari.

BENHAM, Chief Justice, concurring in part and dissenting in part.

I concur in the majority's reversal of the Court of Appeals' judgment which reversed the judgment of conviction entered by the trial court. Although I disagree with the majority's rationale for denying Tyson's motion to dismiss the appeal which resulted from our grant of a writ of certiorari, I concur in the denial of the motion. However, as I would dismiss as moot Tyson's appeal from the trial court's denial of bail requested pursuant to OCGA § 5-7-5, I disagree with the majority's affirmance of the trial court's bail decision in Division 2 of the majority opinion.

1. We granted the State's petition for a writ of certiorari to the Court of Appeals after that court overturned Tyson's conviction for child molestation. Tyson filed a motion to dismiss the granted petition for certiorari, contending that the State's appeal is not one within the limited class of appeals permitted the State under OCGA § 5-7-1 et seq. Rather than examining the case in light of the statute, the majority turns to this Court's constitutional authority to review any Court of Appeals' decision and holds that *our* constitutionally-given jurisdiction to review any Court of Appeals' decision empowers *the State* to file a petition for certiorari for the review of any Court of Appeals' decision in favor of the defendant. The majority goes on to state that a statutory interpretation that places a limit on this Court's constitutional authority would result in an unconstitutional legislative restriction on this Court's constitutional power. I strongly agree that the General Assembly would be treading on constitution-ally-shaky ground if it passed a law that limited this Court's author-

ity to use the writ of certiorari to review any Court of Appeals' case. However, that is not the case here. The statutory scheme at issue here is one that limits the State's authority to ask for a petition for certiorari. It is not a limitation on this Court's ability to issue a writ of certiorari in any Court of Appeals' decision.

The majority goes to great lengths to invoke this Court's constitutional authority and to make clear that any legislative infringement on that constitutional power would be unconstitutional. What the majority does not do is explain why it is necessary to rely on this Court's constitutional power to resolve the motion to dismiss, and does not specify the statutory interpretation that places a limit on this Court's constitutional certiorari power. Tyson's motion is easily denied by relying on this Court's statute-based decision in *State v. Moore*, 237 Ga. 269, 272 (227 SE2d 241) (1976), where this Court was faced with the identical issue and interpreted the statute in a manner that did not endanger this Court's constitutional power. In *Moore*, this Court denied the defendant's motion to dismiss the State's granted certiorari petition after concluding that OCGA § 5-7-1 (a) (2), which permits the State to appeal "[f]rom an order, decision, or judgment arresting judgment of conviction upon . . . legal grounds," authorized the State to seek a writ of certiorari from this Court to the Court of Appeals when that court had reversed a judgment of conviction. This Court held that "[t]he reversal of a trial court's judgment of conviction in a criminal case by the Court of Appeals necessarily 'arrests' a judgment of conviction 'upon legal grounds.'" Id. Tyson's motion to dismiss should be decided on the same grounds.

In its haste to embrace this Court's constitutional power rather than endorse a construction of the statute which does not conflict with the Constitution, the majority unnecessarily confuses the State's right to seek review of decisions of the Court of Appeals by certiorari with this Court's power to review cases by certiorari and tramples on the General Assembly's carefully-crafted statutory scheme. I disagree with the majority's holding that the constitutional provision that gives this Court authority to review by writ of certiorari any Court of Appeals' decision gives any party, including the State, the right to ask this Court to grant a writ of certiorari. This issue was decided adversely to the State shortly after the enactment of the 1916 constitutional amendment[23] that first gave this Court

---

[23] That amendment read: "It shall also be competent for the Supreme Court to require, by certiorari or otherwise, any case to be certified to the Supreme Court from the Court of Appeals for review and determination, with the same power and authority as if the case had been carried by writ of error to the Supreme Court." The provision in the 1983 Constitution states: "The Supreme Court may review by certiorari cases in the Court of Appeals which

authority to review the decisions of the then-newly-formed Court of Appeals. See *Central of Ga. R. Co. v. Yesbik*, 146 Ga. 620, 621-622 (91 SE 873) (1917);[24] *King v. State*, 155 Ga. 707, 712 (118 SE 368) (1923);[25] and *State v. B'gos*, 175 Ga. 627, 637 (165 SE 566) (1932).[26] While I agree with the majority that *B'gos* was incorrect in concluding that the constitutional certiorari provision did not give the Court *jurisdiction* to review a decision of the Court of Appeals, I believe *B'gos*, *King*, and *Yesbik* correctly held that the constitutional certiorari authority given this Court does not give *the State* the right to ask this Court to grant a writ of certiorari.

The majority's holding that this Court's review of decisions rendered by the Court of Appeals adversely to the State in criminal cases is done only "under our constitutional authority," has the unfortunate effect of wreaking havoc upon the General Assembly's statutory provisions. Under the majority's rationale, OCGA § 5-7-5,[27] which is triggered only by the State seeking review pursuant to Title 5, Chapter 7, can never come into effect when the State files a petition for a writ of certiorari in a criminal case. Thus, when the State

---

are of gravity or great public importance."

[24] In *Yesbik*, this Court stated that the constitutional amendment

was manifestly intended to vest *in this court* a comprehensive power, extending to the review of any decision pronounced by the Court of Appeals; . . . it is manifest that a careless exercise of the power would defeat the very purpose of the institution of the Court of Appeals. . . . This court, therefore, should be chary of action in respect to certiorari, and should not require by certiorari any case to be certified from the Court of Appeals for review and determination, unless it involves gravity and importance. *It was not intended that in every case a complaining party should have more than one right of review.*

(Emphasis supplied.) The *Yesbik* opinion limited this Court's grant of certiorari to cases which present matters of gravity and importance. Id. at 622.

[25] In *King*, this Court reiterated the point that it was *not* the purpose of the 1916 amendment, "whereby provision was made for the issuance of a writ of certiorari to the Court of Appeals, that such review was conferred upon all litigants as a matter of right."

[26] In *State v. B'gos*, supra, this Court was faced with the contention that the reference in the constitutional amendment to "any case" authorized a writ of certiorari on the State's petition. This Court stated:

The reply to that argument is that the framers of the constitution were dealing only with the nature of the cases to be reviewed, and not with the right of any particular party or litigant to appeal. . . . "It certainly asserts that all causes of a criminal nature may be carried up to the Supreme Court, but it does not declare by whom — it does not say by the State." So we hold that the language "any case" does not give any express right to the State to appeal.

Because there was no statutory authority for the State to seek a writ of certiorari, the *B'gos* court dismissed the certiorari petition for lack of jurisdiction.

[27] OCGA § 5-7-5 states:

In the event the state files an appeal as authorized in this chapter, the accused shall be entitled to be released on reasonable bail pending the disposition of the appeal, except in those cases punishable by death. The amount of the bail, to be set by the court, shall be reviewable on direct application by the court to which the appeal is taken.

appeals directly or by interlocutory application a *trial court's* ruling in favor of the criminal defendant, the defendant is authorized to seek bail under § 5-7-5; but when the State seeks to have this Court review by certiorari a *Court of Appeals'* judgment in favor of a criminal defendant, the defendant is deprived of the opportunity to seek bail under § 5-7-5. As a result of the majority's unnecessary invocation of this Court's constitutional authority, criminal defendants whose cases come to this Court via the State's petition for certiorari are denied the legislative benefit provided them, and the suggestion in the ABA Standards for Criminal Justice, § 21-1.4 (c), that provision be made for defendants to seek bail when the prosecution initiates an appeal, is frustrated.

Also adversely affected by the majority's rationale is OCGA § 5-7-3, which permits the State to seek certiorari only "from one court to another court of this state . . . in the specified situations set forth in Code Sections 5-7-1 and 5-7-2." In § 5-7-1, the only situations in which the State may appeal in criminal cases must involve the issuance of orders and judgments by "courts from which a direct appeal is authorized to the Court of Appeals of Georgia and the Supreme Court of Georgia in criminal cases. . . ." The only Georgia courts that have a certiorari relationship and meet these criteria are this Court and the Court of Appeals.[28] Thus, § 5-7-3 only applies to the State's application to this Court to review decisions of the Court of Appeals. By holding that this Court reviews Court of Appeals' decisions at the instance of the State only under our constitutional authority, the majority negates § 5-7-3 and effectively destroys an interlocking statutory scheme that involves both regulation of the State's right to seek review and a criminal defendant's right to seek bail when the State initiates review of an appellate decision favorable to the defendant.

In support of its position, the majority enlists the American Bar Association Standards for Criminal Justice and Standards Relating to Appellate Courts to set up a strawman it can then knock down. That strawman is the statement in the majority opinion that "restrictions on the state's right to appeal from a trial court's decision should not apply to the state's right to appeal from an intermediate appellate court's decisions," and the stick the majority would use to knock it down is the assertion that "this Court has analyzed the state's right to seek review of court of appeals' decisions in the same way as

---

[28] The other courts that have jurisdiction of criminal matters and whose decisions in criminal cases can be the subject of a petition for certiorari are magistrate courts (OCGA § 15-10-65); probate courts (OCGA §§ 15-9-30.3–15-9-30.6); and traffic courts. However, none of these courts' decisions in criminal matters are directly appealable to this Court or the Court of Appeals, as is required by § 5-7-1.

the state's right to appeal from trial court decisions." Neither statement is supported by the authority cited for it, and neither is accurate.

The majority cites § 3.10 (a) (ii) & (c) of the ABA Standards Relating to Appellate Courts and § 21-1.4 (a) & (b) of the ABA Standards for Criminal Justice in support of the first proposition, but those sections do not support that statement. In fact, reference to those ABA Standards demonstrates that our appellate process, without the changes made by the majority in this case, conforms very closely to the Standards.

The first paragraph cited, § 3.10 (a) (ii), suggests only that the prosecution's right of appeal be limited as provided in § 21-1.4 of the Standards for Criminal Justice. Those limits parallel very closely the statutory provisions in Title 5, Chapter 7 of our Code. It is readily apparent upon comparison that sub-subsections (a) (1), (a) (3), and (a) (4) of OCGA § 5-7-1 constitute succinct statements of the provisions of subparagraphs (i), (ii), and (iii), respectively, of § 21-1.4 of the Standards for Criminal Justice. The provision in paragraph (b) of § 21-1.4, quoted by the majority, that the prosecution be permitted to seek review of intermediate appellate court decisions directly parallels OCGA § 5-7-1 (a) (2) as interpreted by this Court in *State v. Moore*, supra, 237 Ga. at 272.

Paragraph (c) of § 3.10 of the Standards Relating to Appellate Courts is even less supportive of the majority's position in that it only suggests that review of intermediate appellate court decisions should be pursuant to a discretionary process very similar to the provisions in our Constitution and Code for certiorari. Ga. Const. 1983, Art. VI, Sec. VI, Par. V; OCGA § 5-6-15. Nonetheless, the majority suggests that the decisions of this Court have been made "[d]espite these standards." In fact, Georgia law and this Court's decisions are in keeping with those standards.

2. After going to such lengths to unnecessarily invoke this Court's constitutional power, the majority, without comment or explanation, summarily affirms the trial court's denial of Tyson's request, pursuant to OCGA § 5-7-5, to be released on bail pending the disposition of the State's appeal. As Justice Carley's concurrence points out, Tyson's appeal from the denial of bail presents several issues to be decided by this Court: What does the statute mean by "shall be entitled to be released on reasonable bail?" What party has the burden of proof when the trial court is considering a motion for bail based on § 5-7-5? To these questions I would add another: if, as the majority opinion holds, all petitions for certiorari filed in this Court by the State in criminal matters are here by dint of this Court's constitutional authority to grant a writ of certiorari to review any Court of Appeals' decision, then under what authority is this

Court reviewing the appeal from the denial of bail? The majority's metamorphosis of legislative limitations on the State's right to appeal in criminal cases into an unconstitutional assault on this Court's constitutional authority to grant a writ of certiorari in any Court of Appeals' case effectively keeps the majority from having to construe the ramifications of OCGA § 5-7-5. As I noted above in Division 1, while OCGA § 5-7-5 authorizes the criminal defendant to have the bail matter reviewed by the appellate court in which the State's appeal is pending, that authority is dependent upon the State having filed an appeal as authorized in Title 5, Chapter 7. There is no such appellate provision when the State's appeal is before this Court due to this Court's exercise of its constitutional certiorari power. The majority opinion offers no resolution to the issues, and appellate jurisprudence suffers from the majority's failure to set forth the rationale for its judgment.

The majority's reticence, however, cannot be construed as an implicit determination that OCGA § 5-7-5 is not applicable to the case at bar. As the defendant in a criminal case in which the State sought to appeal an adverse decision, Tyson had a statutory right under OCGA § 5-7-5 to seek release on bail pending the disposition of the State's appeal. Tyson's invocation of his statutory right to seek bail in no way impinges upon this Court's constitutional authority to grant a writ of certiorari to review any case decided by the Court of Appeals. Nor does the fact that the State must initiate the appellate process before the criminal defendant may invoke his statutory right encroach upon this Court's constitutional authority to grant a writ of certiorari in any Court of Appeals' case it wishes. While this Court's constitutional power to grant certiorari in any Court of Appeals' case permits the Court to overlook the statutory limitations placed on the State and grant or deny the petition based on the existence or nonexistence of gravity or great public importance, the statutory limitations placed on the State cannot be ignored by this Court when the issue is not whether to grant certiorari, but whether the necessary prerequisites to a criminal defendant seeking bail under § 5-7-5 have been met. In the latter instance, if the State's appeal does not fall within the limitations of Title 5, Chapter 7, then the criminal defendant is not statutorily entitled to seek bail pursuant to OCGA § 5-7-5; if, however, the State's appeal does fall within those appeals permitted by Title 5, Chapter 7, the criminal defendant is authorized to invoke § 5-7-5 as a basis for seeking release on bail pending the disposition of the appeal initiated by the State. Because OCGA § 5-7-5, in and of itself, does not limit this Court's ability to grant a writ of certiorari to any decision of the Court of Appeals and § 5-7-1 serves only as a statutory prerequisite and not as a jurisdictional limitation when the criminal defendant invokes entitlement to bail under § 5-7-

5, the majority's lack of rationale concerning its affirmance of the denial of bail should not be seen as a determination that § 5-7-5 is not applicable to the situation.

I dissent from the majority's summary affirmance of the trial court's denial of Tyson's request for release on bail pursuant to OCGA § 5-7-5.[29] That statute makes it clear that Tyson's appeal of the trial court's denial of his request for release on bail is made moot by this Court's issuance of an opinion addressing the merits of the State's appeal. OCGA § 5-7-5 contains a temporal limitation — any release on bail granted pursuant to it is good only "pending disposition of the appeal." With today's issuance of an opinion on the State's appeal, Tyson's window for release on bail is closed, and any allegations of error concerning the trial court's denial of bail are moot. Therefore, the majority need not go to the lengths it does to affirm the trial court's action. See *Hopkins v. Hamby Corp.*, 273 Ga. 19 (538 SE2d 37) (2000); OCGA § 5-6-48 (b).

3. My disagreement with the majority opinion should in no way be construed as a disagreement with the existence of this Court's constitutional power to review by certiorari any decision of the Court of Appeals. This Court has been constitutionally endowed with the authority and power to use the writ of certiorari to the Court of Appeals to review any case "of gravity or great public importance" decided by that body. Ga. Const. 1983, Art. VI, Sec. VI, Par. V. But see Supreme Court Rule 40 ("A petition for the writ will be granted only in cases of great concern, gravity, **and** importance to the public."). Because of its constitutional authority to review by certiorari any Court of Appeals' decision, this Court is empowered to overlook procedural and subject-matter limitations imposed by statutes or court rules.[30] Thus, any motion to dismiss a granted petition for certiorari that is based on purported non-compliance with statutes or court rules can be denied by this Court, regardless of the merits of the motion, because this Court may rely on its constitutionally-based power to review by writ of certiorari any case from the Court of

---

[29] Since I believe that the State's appeal falls within the parameters of OCGA §§ 5-7-1 and 5-7-3, the appeal from the denial of bail is rightfully before this Court pursuant to OCGA § 5-7-5.

[30] This Court expressly exercised its constitutional authority in *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673) (1983), and implicitly invoked its constitutional authority when it granted certiorari in cases where this Court's rules said certiorari was not available, e.g., in workers' compensation cases (see *Hennly v. Richardson*, 264 Ga. 355 (444 SE2d 317) (1994); *Barge-Wagener Constr. Co. v. Morales*, 263 Ga. 190 (429 SE2d 671) (1993); *Felton Pearson Co. v. Nelson*, 260 Ga. 513 (397 SE2d 431) (1990)); and in cases where the trial court had denied summary judgment. See *Dept. of Transp. v. Bridges*, 268 Ga. 258 (486 SE2d 593) (1997); *White v. Metropolitan &c. Ins. Co.*, 266 Ga. 371 (467 SE2d 332) (1996); *Motel Properties v. Miller*, 263 Ga. 484 (436 SE2d 196) (1993).

Appeals.[31] The root of my disagreement with the majority is in the majority's needless invocation of the Court's constitutional power that has had a rippling effect on a statutory scheme that, until today, was found strong enough to rebuff, without constitutional reinforcement, the attack made on it by this defendant.

DECIDED MARCH 29, 2001 —
RECONSIDERATION DENIED APRIL 12, 2001.

*Case No. S00G0606*

Certiorari to the Court of Appeals of Georgia — 241 Ga. App. 288.

*Patrick H. Head, District Attorney, Dana J. Norman, John Richter, Debra H. Bernes, Maria B. Golick, Cindy Yeager, Assistant District Attorneys*, for appellant.

*Browning, Tanksley & Casurella, George T. Smith*, for appellee.

*Case No. S00A2019*

*Browning, Tanksley & Casurella, George T. Smith*, for appellant.

*Patrick H. Head, District Attorney, Dana J. Norman, John Richter, Debra H. Bernes, Maria B. Golick, Cindy Yeager, Assistant District Attorneys*, for appellee.

---

[31] In light of that constitutional power, every certiorari petition filed in this Court and subject to dismissal for failure to comply with the procedural requirements of Supreme Court Rule 38 or because the certiorari-seeker lacked standing (*In re Stroh*, 272 Ga. 894 (534 SE2d 790) (2000)), or to summary denial under Rule 40 for improper subject matter, could have its merits examined to determine whether the issues contained therein are of sufficient gravity or great public importance to warrant overlooking the procedural or subject matter deficiency and invoking the constitutional authority to review by certiorari any decision of the Court of Appeals. For that matter, every opinion issued by the Court of Appeals could be reviewed by this Court, regardless of whether or not a petition for certiorari has been filed, to determine whether a writ of certiorari should issue pursuant to this Court's constitutional authority.